UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
         )
         )      No. 1:22-CR-10279
v.          )
         )
         )
AUGUSTIN VILLA          )

## DEFENDANT'S SENTENCING MEMORANDUM

Now comes the defendant, Agustin[1] Villa, before this Honorable Court and respectfully submits the following memorandum in support of his request that this Court sentence him to a two year period of probation. Mr. Villa has extremely deep ties to his Rhode Island community, including his church, his local soccer club, and his family, and constantly gives back to others and enriches the lives of those around him. A two year period of probation is sufficient but not greater than necessary to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

---

[1] Mr. Villa maintains the spelling of his name as listed in the Indictment for the case caption, but uses the preferred Spanish spelling of his name, Agustin, here.

## Background

Mr. Villa, age 61, was born in Mexico, but has since settled and built strong family and community ties, including through church, his work, and a local soccer club, in Rhode Island.

His mother and father were married when Mr. Villa was born, but divorced when Mr. Villa was ten years old. (PSR ¶ 37). His mother had 22 children, and, because his parents prioritized financial concerns over the children's education, Mr. Villa began working around age five to help support the family. (PSR ¶ 37). Mr. Villa attended ninth grade in Mexico but has not had further education. (PSR ¶ 50). He recalls that his home environment was dysfunctional, and observed domestic violence between his parents. (PSR ¶ 37). Mr. Villa believes that, since he shared his father's name, his mother took out her frustrations on him in particular, and he suffered from both verbal and emotional abuse. (PSR ¶ 37). He lived with his family before immigrating to the United States in 1985. (PSR ¶ 36). He later become a United States citizen. Both his parents are now deceased, but he remains close with four of his siblings, two of whom live in Rhode Island, and two of whom live in Wisconsin. (PSR ¶ 37).

Mr. Villa is divorced and does not currently have a partner. He has been married twice before. (PSR ¶ 38-40). He was married to Consuelo Flores from 1983 to 2006, and together, they had two children. (PSR ¶ 40). Mr. Villa was married to Jahhaira Lugo from 2013 to 2021. (PSR ¶ 39). Mr. Villa has close relationships with both of his children. He lives with one of his sons, Kevin Villa, and has been living

with him in Cranston, Rhode Island, since 2014.  His son, Hector Villa, lives close by in Providence, Rhode Island.  Kevin describes Mr. Villa as a "hard working man" who is "always willing to lend a hand with everything from help the elderly neighbors with [their] groceries inside the house to helping [him] find a job."  (Ex. B).  Kevin notes that his father has shown "genuine remorse for his actions," and they are aware of the gravity of the crime that he pled guilty to.  (Ex. B).  Kevin knows, however, that his father "gives his best to make his family positive, smile and laugh everyday that he gets a chance."  (Ex. B).

Mr. Villa has a solid history of being employed full-time in various industries, largely in his now-home state of Rhode Island.  (PSR ¶ 52-59).  His work history includes work as a plater in Providence at Ennovi, (PSR ¶ 50), which "design[s] and manufacture[s] products and solutions for electrical battery platform developments, power component, and signal interconnect design solutions," *About Us*, ENNOVI, (https://ennovi.com/about-us/).  His manager at Ennovi writes that, during his time working with Mr. Villa, Mr. Villa has "shown great character and responsibility," always has a "great attitude," and "works well with all his coworkers."[2]  (Ex. B).  Mr. Villa "shows up to work everyday and is willing to go the extra mile to help others." (Ex. B).

Mr. Villa is a regular attendee at the Iglesia Roca Eterna Church, "often visiting on Sundays and during the week."  Pastor Alcantara writes that over the past

---

[2] Mr. Villa was recently laid off because the plant is beginning the process of shutting down.  He looks forward to applying to jobs and looking for similar work.

two years that she has known Mr. Villa, she has "observed his character and can confidently say that he is a good man with a positive attitude." (Ex. B).

Mr. Villa also is a "valued member of [the] vibrant soccer community [] in Rhoda Island." (Ex. B). As part of the Real Colombia Football Club, the president writes that Mr. Villa has "demonstrated unwavering commitment, sportsmanship, and a passion for the game far beyond the pitch." (Ex. B). Mr. Villa has dedicated himself to coaching and mentoring young adults, which President Vargas writes has had a "meaningful and lasting impact." (Ex. B). Providing "structured training sessions and personal guidance, he has helped nurture the skills and character of the next generation of players." (Ex. B). His contribution is not limited to the young; President Vargas notes that Mr. Villa's "enthusiastic support and involvement in [their] Veterans Over-40 League," has been "equally important." (Ex. B). Mr. Villa shows the same high energy level and respect, and his "presence on and off the field inspires many and strengthens the community." (Ex. B).

Mr. Villa improves the communities around him from his family, to his church community, to his soccer community and to the greater Rhode Island community.

## **Offense Conduct**

The government conducted a lengthy investigation into Jin Hua Zhang and his drug trafficking organization. Through its investigation, which included many transactions with cooperating witness, intercepted wire communications, and surveillance, the entirety of what was learned about Mr. Villa is captured in Paragraph 10 of the Pre-Sentence Report:

Agents identified AUGUSTIN VILLA as a member of a drug trafficking organization that used ZHANG's group to launder drug money. On May 26, 2022, ZHANG advised the undercover agent to expect to receive a bulk cash delivery from a customer of ZHANG's organization. A dispatcher working for ZHANG contacted the cooperating witness over Telegram, an encrypted messaging platform, to set up a meeting with the courier at a Home Depot in Cranston, Rhode Island. The cooperating witness sent a photograph of a dollar bill to ZHANG to be passed on to the courier. This method of identification is commonly used in the drug and money laundering trade so that coconspirators who do not know each other can confirm each other's identities. When the cooperating witness arrived at the meeting location, ZHANG's dispatcher said that the courier was driving a black Chevrolet SUV. Ten minutes later, <u>a black Chevrolet Equinox SUV registered to VILLA pulled into the parking lot. The cooperating witness entered VILLA's car. During a brief recorded meeting, the cooperating witness showed VILLA the dollar bill he had previously photographed and transmitted to ZHANG, and VILLA handed the cooperating witness a bag containing $75,860 in cash</u>. The undercover agent then sent an equivalent amount of Tether, a kind of cryptocurrency, minus a $1,520 fee, to ZHANG's digital wallet. <u>The cooperating witness identified a Registry of Motor Vehicle's photograph of VILLA as the courier.</u>[3]

(PSR ¶ 10). Despite the extensive investigation that the government conducted in this case, the above information is all the evidence the government has about Mr. Villa. Mr. Villa did not engage in any other transaction, he did not appear on any intercepted communication, he was not seen with any of the co-conspirators, and above all, he was never involved in any aspect of this case other than showing up on May 26, 2022, to deliver a package to the cooperating witness. There is no evidence as to how he came to be the one who delivered the money on May 26, nor is there any evidence to suggest that he had knowledge of any aspect of the conspiracy other than

---

[3] Mr. Villa objected to the first sentence in this paragraph which characterized him as a member of the "drug trafficking organization. "Mr. Villa disputes his membership in any organization and disputes any knowledge of drug activity.

his limited role in making a single cash delivery.  This is because Mr. Villa had no other role and engaged in no other conduct related to the charged conspiracy.  There is no evidence demonstrating his knowledge of the contents, and there is no evidence that he benefited, financially or otherwise, from dropping off the cash.

### Applicable Guidelines and Recommended Sentence

Mr. Villa pled guilty to Count One of an Indictment charging a money laundering conspiracy in violation of 18 U.S.C. § 1956(h).

The Probation Department calculated Mr. Villa's guidelines as follows.  His base offense was determined to be 14, which is increased by two levels to 16 because of the conviction under 18 U.S.C. § 1956.  (PSR ¶ 15-16).  Mr. Villa's offense level is reduced by two for his minor role, and by two for his acceptance of responsibility.  (PSR ¶ 18, 22).  Probation calculated, therefore, that Mr. Villa's total offense level is 12.  With a criminal history category of II, Probation determined that Mr. Villa's guidelines are 12 to 18 months.  (PSR ¶ 30-31, 67).

Mr. Villa submits that his total offense level should be considered to be 10, resulting in guidelines of 8 to 14 months.  Mr. Villa's score should be decreased by four points for his minimal role.  See USSG § 3B1.2(a).  Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity."  USSG § 3B1.2, Application Note 3(A).  The four level adjustment for minimal participants "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group."  USSG § 3B1.2, Application

6

Note 4.  "Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."  USSG § 3B1.2, Application Note 4.

As stated at the Rule 11 hearing, Mr. Villa has maintained that he lacked actual knowledge, and pled guilty only under a theory of willful ignorance.  He did not know "the scope and structure of the criminal activity," did not participate in "planning or organizing the criminal activity," did not exercise decision-making authority with respect to the criminal activity, and his participation is extremely limited and narrow: transferring a bag that contained money on one occasion.  USSG § 3B1.2(a), Application Note 3(C) (identifying non-exhaustive list of factors for consideration).  Mr. Villa is plainly among the least culpable of those involved, and should receive the four-level adjustment for being a minimal participant.

With the four-level adjustment, Mr. Villa's total offense level should be reduced to 10, resulting in guidelines of 8-14 months.  Mr. Villa submits that even these guidelines overstate his role and his criminal history, and recommends a variant sentence.  Two years of probation is an appropriate sentence given Mr. Villa's conduct and level of knowledge, and in considering factors personal to Mr. Villa.  Mr. Villa is open to and will abide by conditions deemed appropriate by the court during this probation period.

## **Conclusion**

For the reasons stated above, Mr. Villa moves that this Court impose a sentence of two years of probation.

Respectfully submitted,

**Agustin Villa,**

by his attorney,

*/s/ Jason Benzaken*

Jason Benzaken, Esq.
Benzaken, Maguire, Sheehan & Wood, LLP
1342 Belmont Street, Suite 102
Brockton, MA 02301
(Tel) 508-897-0001
(Fax) 508-587-5455
BBO No. 658869
*jbenzaken@bmswlaw.com*

DATED:  June 18, 2025

## **Certificate of Service**

I hereby certify that a copy of this motion has been served upon counsel for the United States and all registered parties by CM/ECF or email.

*/s/ Jason Benzaken*

DATED: June 18, 2025